**14 CV**                                    **4314**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK



SARAH R. YOUNG,

                                    Plaintiff,

-against-

INTELLICELL BIO SCIENCE INC., STEVEN
VICTOR, MD, in his capacity as Chairmen -
CEO, and individually, ANNA RHODES as
former Executive Vice President and individually,
LEONARD L. MAZUR as interim Chief
Operating Officer and individually, THE CITY
OF NEW YORK, NYPD POLICE
COMMISSIONER RAYMOND KELLY in
his official capacity, and individually, NYPD
DETECTIVE RYAN CURLEY in his official
capacity, and individually, Detective JOHN
DOE, in his official capacity, and individually,
New York County District Attorney CYRUS
VANCE, JR., in his official capacity, and
individually, New York County Assistant
District Attorney ALLISON ALTMANN, in her
official capacity, and individually,

                                    Defendants.

Case No. 14 CV

**COMPLAINT**

RECEIVED
JUN 16 2014
U.S.D.C. S.D. N.Y.
CASHIERS

**JURY TRIAL
DEMANDED**
Pursuant to Fed. R. Civ. P. 38(b)

Plaintiff Sarah R. Young, by her attorneys, the Law Office of Douglas R.

Dollinger, P.C. & Associates complaining of the Defendants hereby brings this

action alleging as follows:

## PRELIMINARY STATEMENT

1.      This actions seeks relief for among other things civil rights violations

directed at plaintiff, Sarah R. Young by the defendants for their violations of her

rights as secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, by the United States Constitution, including its First, Fourth, and Fourteenth Amendments, and by the laws and Constitution of the State of New York, her statutory and common law rights as and for wrongful conduct for claims commencing September 2011 and continuing to October 7, 2013 [the "Relevant Period"].

2.     Plaintiff seeks compensatory damages against all of the Defendants and punitive damages against all individual defendants, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

3.     Jurisdiction is conferred upon this Court by reason of a federal question pursuant to 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights.

4.     In the alternative jurisdiction exists pursuant to 28 U.S.C. §§ 1332 in the complete diversity of citizenship among the parties with the amount in controversy exceeding the sum of $75,000.00.

5.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action and within the original jurisdiction of this court that they form part of the same case or controversy.

6.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendants businesses are located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## PARTIES

**Plaintiff:**

7.     At all times relevant to this action, Plaintiff Sarah R. Young ("Young") is a resident of the County of Alachua, State of Florida.

**Defendants:**

8.     At all times relevant herein, defendant, IntelliCell Bio Sciences ("Intellicell") was and is a Nevada corporation engaged in medical research maintaining its principle place of business in the State of New York, having its executive offices located at 460 Park Avenue, New York, New York.

9.     Upon information and belief, defendant Steven Victor MD, ("Victor") is domiciled and residing in the State of New York, and a doctor of medicine duly licensed to practice medicine or otherwise conduct medical research in the State of New York.

10.     At all times relevant herein, defendant Victor was and is the Chairman of the board of directors and CEO of the IntelliCell, is domiciled and a resident of the State of New York and is being sued herein in both his official capacity and as an individual.

11.   At all times relevant herein, defendant, Anna Rhodes ("Rhodes") was the former Executive Vice President of Operations of IntelliCell, is domiciled and a resident of the State of New York and is being sued herein both his official capacity and as an individual.

12.   Upon information and belief, defendant Leonard L. Mazur ("Mazur") was and is the interim Chief Operating Officer of IntelliCell and is domiciled and a resident of the State of New York and is being sued herein both his official capacity and as an individual.

13.   The true name of Defendants John Doe ("Doe") and Jane Roe ("Roe") are unknown to plaintiffs at this time.   Plaintiffs sue these defendants by their fictitious names and will upon determining their true identity seek leave to amend this complaint under their true names.

14.   Plaintiffs are informed and believe, and based on that information and belief allege, that the Defendants Doe and Roe are legally responsible, for the events and happenings referred to in this complaint, and have unlawfully caused the injuries and damages to plaintiffs alleged hereafter.

15.   Plaintiffs are informed and believe, and based on that information and belief allege that at all times mentioned in this complaint, Defendants Doe and Roe were the agents and employees and/or principles in doing the things alleged in this complaint and were acting within the course and scope of such

agency-employment or were acting in their individual capacity and are jointly and severally liable for the damages caused to Plaintiffs.

16.    Defendant City of New York ("City" and from time-to-time The "Municipal" Defendant) is and was at all times relevant herein a municipal entity created, existing and authorized under the laws of the State of New York.

17.    The City, maintains the New York City Police Department, a municipal agency created and authorized under the laws of the State of New York and charged with the duty to investigate arrest and assist in the prosecution of criminal conduct within the County and City of New York.

18.    Public employee Defendants NYPD Detectives Ryan Curley ("Curley") and Detective Doe are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the New York City Police Department, a municipal agency of Defendant City of New York.

19.    At all times hereinafter mentioned defendant Raymond Kelly was the duly appointed Police Commission for the City of New York in charge of hiring and supervision over the detectives and police officers assigned to the New York Police Department and as such, was responsible for the policies, practices and customs adopted by those units-divisions-precincts as well as well as the training,

retention, supervision, discipline, counseling and control of the detectives-police officers who worked under his command and in those units.

20.   At all times hereinafter mentioned, herein the public employee Defendants NYPD Detectives Ryan Curley ("Curley") and Detective John Doe ("Doe") were assigned to the theft and robbery unit under the supervisor of Kelly and as such, were required to be trained in the policies, practices and customs of the unit, as well as, supervised, disciplined, counseled and controlled in the performance of the work assigned to that unit.

21.   The City, maintains the New York City District Attorney's Office a municipal agency created and authorized under the laws of the State of New York and charged with the duty to investigate and the prosecution of criminal conduct within the County and City of New York.

22.   At all times hereinafter mentioned defendant Cyrus Vance, Jr. was the duly elected New York County District Attorney in charge of the hiring and supervision of the staff assigned to New York County District Attorney's Office and as such, was responsible for the policies, practices and customs of the units-divisions therein as well as well as the training, retention, supervision, discipline, counseling and control of the assistant district attorneys who worked under his command and in those units.

23.    At all times hereinafter mentioned, defendant Allison Altmann ("Altmann"), was an employee and agent of the New York County District Attorney's Office, acting as an Assistant District Attorney working under Defendant Cyrus Vance, Jr.

24.    At all times hereinafter mentioned, defendant Altmann was assigned to the theft and robbery unit under the supervisor of  Cyrus Vance, Jr. and as such, was required to be trained in the policies, practices and customs of the unit, as well as, supervised, disciplined, counseled and controlled in the performance of the work assigned to her unit.

25.    The City Defendant assumes the risks incidental to the maintenance of a police force, the employment of detectives-police officers; the district attorney's office and the employment of assistant district attorneys.

26.    At all times hereinafter mentioned the Municipal defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

27.    Each and all of the acts of the Municipal defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

28.    Each and all of the acts of the Municipal defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

29.    By the conduct, acts, and omissions complained of herein, the collective Defendants violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments to the United States Constitution of which a reasonable persons and/or a police officers under the circumstances would have known.

## NOTICE OF CLAIM

30.    Plaintiff timely filed a Notice of Claim with the Comptroller of the City, setting forth the facts underlying Plaintiff's claim against Defendants and the City.

31.    The City assigned a claim number to Plaintiff's claim, and Plaintiff was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on Mach 12, 2014. The matter was adjourned without a date for rescheduling.

32.    More than 30 days has elapsed since the adjournment and the City has neglected or otherwise refused to settled or adjust the claim.

33.    To date, no answer has been received by Plaintiff and no compensation has been offered by Defendant City of New York in response to this claim.

34.    This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

**Civilian Defendants Willful And Intentional Failure To Pay Plaintiff's Agreed To Wages, False Tax Withholdings And Other False Filings**

35.    At all times during the Relevant Period IntelliCell was a public Corporation trading under the ticker symbol "SVFC".

36.    At all times during the Relevant Period IntelliCell was operated and controlled by its board of directors wherein a majority of the Board existed in defendants Victor, Rhodes and Mazur collectively hereafter the "Board".

37.    IntelliCell's primary business was/is focused on the expanding regenerative medical markets and licensing-using its patented adipose stromal vascular fraction stem cell rejuvenation process (from time-to-time "SCRP" as filed with the United States Patent and Trade Office ("USPTO").

38.    At all times during the Relevant Period, IntelliCell was inspected and subject to FDA oversight of its facilities and medical procedures.

39.    At all times during the Relevant Period IntelliCell was seeking a Lab Director and Quality Assurance Officer for its Manhattan "facilities" located at 460 Park Avenue, 17th Floor New York, New York, City of New York, State of New York.

40.     At all times during the Relevant Period the Plaintiff was a resident and domiciled in the State of Florida.

41.     At all times during the Relevant Period IntelliCell offered Plaintiff the position as a Lab Director and Quality Assurance Officer overseeing the SCRP laboratory quality development if she would relocated to New York City agreeing to pay Plaintiff an annual salary of $110,000.00.

42.     At all times during the Relevant Period based on the promise payment of a salary of $110,000.00 offered by IntelliCell to Plaintiff, Plaintiff relocated to New York City wherein IntelliCell hired or otherwise employed Plaintiff as a Lab Director and Quality Assurance Officer at their Manhattan facilities overseeing the SCRP  laboratory quality assurances.

43.     At all times during the Relevant Period, IntelliCell failed to meet or otherwise comply with FDA protocols and was advised of its violations in writing.

44.     During the Relevant Period Plaintiff became aware of the flaws deficiencies, inaccuracies, errors and intentional manipulations of data and/or testing equipment in the developmental protocols engaged in by Defendant Victor and his manipulations of data so as to appear FDA compliant  and reported time to time Victor's fraud and data tampering to the Board including:

> a.     During the Relevant Period, Victor  instructed employees to fabricate and  back-record temperatures and  humidity data from the months of January, February and March  of 2013 when data was  lost on  the  Dickson Temperature Logger.

b.    During the Relevant Period, at the direction of Victor Data identifiers for cell samples were altered in the Millipore laptop months after entry testing and later saved under different file names to be used as fake data sets.

c.    During the Relevant Period, at the direction of Victor Data was also fabricated for the use in U.S. Patent Application Serial No. 13/323,030 entitled "Ultrasonic Cavitation of Adipose Tissue to Produce Stromal Vascular Fraction Regenerative Cells."

d.    During the Relevant Period, at the direction of Victor if the cell preparation did not pass QA standards of 80% viability and a minimum of qualifying cell counts of 50 million cells, Victor in excess of 10 times manipulated the parameters of the Millipore machine until he got the desired test results.

e.    During the Relevant Period, Victor and the Board knew and was aware that cells were dead and that that the harvest was less than 3% and most often not at all but intentionally failed to disclose the information as required altering log and data to conceal the true results.

f.    During the Relevant Period, Victor and the Board knew and  was aware as advised by multiple licensees that the cells tested were not alive, but dead extracellular matrix and that the lasers on the Millipore machine was in fact counting small lipid droplets and not live cells.

g.    During the Relevant Period, at the direction Victor testing cartridges t h a t  were not obtained to test for levels of bacterial activity wherein false recording was made documenting that the cells were tested and passed, when in fact they were not verified.

h.    During the Relevant Period, Victor advised patients that  he could cure them of any disease in violation of medical and laboratory protocols established by the FDA.

i.    During the Relevant Period, the Board knew and was aware  that the medical freezer remained full of adipose tissue that i t  was

used for practice testing which was unlabeled in 60cc syringes without patients identifying makers for comparison and cross-check.

j.    During the Relevant Period, the Board knew and was aware that the probe for the ultrasonic cavitator corrodes used during the procedures to releases particles of titanium into the IV cell product was unverified for toxicology/heavy metal studies alter the data and results.

k.    During the Relevant Period, the Board knew and was aware that Bio-hazardous waste was being thrown out in the regular trash because Victor would not pay for Stericycle to pick- up during the period from August 2012 to March 2013.

l.    During the Relevant Period, the Board knew and was aware that Consents were not performed verbally nor documented SVF cases for NY13D002 so as to cover this mistake consents were back dated a week later and emailed to the patients to sign and return to the office.

m.   During the Relevant Period, Victor and the Board knew and was aware and used the R&D only Millipore labeling "Not for human use" but were used on human subjects.

n.    During the Relevant Period, Victor and the Board knew and was aware that the autoclave failed the weekly Biological Indicator runs and was failing runs by not getting up to a high enough temperature. The temperature gauge did not work correctly to 20 degrees accuracy but was not repaired wherein data and testing although used was not accurate.

o.    During the Relevant Period, Victor and the Board knew and was aware that sonicated cells returned to the patient after processing were in fact in apoptosis or were dead and dying cell population, not live, viable cells as is claimed were used in the procedure.

p.    During the Relevant Period, Victor and the Board knew and were aware of the foregoing, as noticed by email dated April 7, 2013 from Robert Sexaur giving a report received from Rutgers: The initial reports from Rutgers University and Professor Kohn and Dr. Mao, an industry qualified cell biologist, is that the IntelliCell cell population is primarily a dead cell population.

q.   During the Relevant Period, Victor and the Board knew and was aware and intentionally made false claims that the process was culturing and successfully growing stem cells in the lab.

r.   During the Relevant Period, Victor and the Board knew and were aware that Cells were sent to University of Miami, the University of Florida, to Rutgers University and in each instance they did not grow.

s.   During the Relevant Period, Victor and the Board knew and were aware that Victor was conducting unregistered clinical trials. Using SVF and Platelet Rich Plasma (PRP) eye serum using the patient's own growth factors from their own blood.

t.   During the Relevant Period, Victor with the Board's knowledge purchased equipment and supplies without having intention or the means to pay for them but received money from licensees.

u.   During the Relevant Period, Victor with the Board's knowledge wrote prescriptions to investor without a clinical need as and for an "INVESTMENT INCENTIVE".

45.   During the Relevant Period, the Board knew and was aware of the foregoing fraudulent conduct of Victor and reported his activities and the defects in the conduct to the Board where in response thereto the Board took no action other than to say they would investigate her claims.

46.   At all times during the Relevant Period,  Plaintiff continued to complain to the Board advising Defendant Mazer that if the he did not take immediate action she was going to report the tampering to the authorities-FDA.

47.   During the Relevant Period so as to attempt to control humiliate and cause fear in the Plaintiff and otherwise stop her from reporting her findings of

wrongdoing and stop her from making written reports, advising the Board or the authorities of her findings on no less than 7 occasions Victor verbally threatened and otherwise physically abused Plaintiff wherein Victor told Plaintiff he was going to "string her up and gut her like a deer;  Defendant Victor would grab Plaintiff by the back of her neck or her wrist squeezing both her wrist and neck causing Plaintiff to experience immediate bruising and pain.

48.     At all times during the Relevant Period Plaintiff was a salaried employee, executed a W-4 and was a participant in a contributing 401 K plan-fund where the Company and Board members in their fiduciary capacities were required to accurately report wages and withholdings making payments as fiduciaries into state and federal tax treasuries or local governments for unemployment insurance and to the 401K fund account.

49.     Plaintiff is informed and believes, that at all times during the Relevant Period, at the direction of Victor, the Board at times intentionally misidentified wages-benefits-contributions falsely filing wage reports wherein the Company issued Plaintiff employee payroll checks while it withheld the full portions of the wages earned or contributions to the 401k and taxes but intentionally under reported, failed to report or otherwise failed to deposit the actual withholdings or pay said withholdings  into the treasury accounts as required keeping the money for the operations of IntelliCell or directly for their own

personal use including, upon information and belief, lavish dinner outings,  affairs and other non-corporate matters.

50.    At all times during the Relevant Period IntelliCell's Board knew and was aware that IntelliCell was under funded or otherwise without sufficient capital on hand to make its regular payroll payments to Plaintiff and was late with payroll on multiple occasions.

51.    At all times during the Relevant Period as of March 2013, the Company owed wages and/or Company benefits to Sarah R. Young in excess of $30,000.00.

52.    At all times during the Relevant Period as of March 2013, the Company did not have funds available to pay employees wages  and owed in excess of  Three Hundred Thousand ($300.000.00) Dollars to its employees including  wages and/or Company benefits to Sarah R. Young in excess of $30,000.00.

53.    That on or about March 2013, IntelliCell intentionally failed to notify Plaintiff in advance that they were unable or otherwise unwilling to make payroll and wage payments to her.

54.    At all times during the Relevant Period,  Plaintiff complained to the Board advising Defendant Mazer she was going to report the wages withholding to the authorities-and demanded all past due wages.

55.    At all times during the Relevant Period so as to silence Plaintiff in her complaints Victor and the Board improperly caused-forced the termination of Plaintiff from her position as Director of Quality Assurance and was unable or otherwise refusing to pay her past due wages.

56.    At all times during the Relevant Period although due demand had been made and received by the Company the Company has neglected or refused to make payment of wages owed.

**The Intentional/Willful False Arrest of Sarah R. Young
For Whistle Blowing and the Board's Failure to Act**

57.    At all times during the Relevant Period in her position as Quality Control Officer Plaintiff was required to and did maintain control copies of information/testing result including data, reports, lab testing and other information (Control Data) related to the accuracy and verification of her work product as the Company's Quality Assurance Officer wherein Plaintiff maintained an electronic log and/or docket of the foregoing.

58.    At all times during the Relevant Period the Board knew and were aware Plaintiff maintained a control copy of the foregoing data in an electronic log-format.

59.    That in or about April 2013, after her termination Defendants were fearful Plaintiff would use the Control Data to support her claims of wrongdoing and

demanded Plaintiff to produce all copies of her Control Data falsely claiming Plaintiff was without lawful authority to maintain a copy of the foregoing information refusing to make payment to her unless she surrendered her copies of the Control data.

60.    During the Relevant Period in response thereto Plaintiff refused to provide her copy of the Control data-findings as and for her proof of the wrongdoing and verification of the retaliatory conduct of Victor further demanding her past wages in the sum of $30,000.

61.    At all times during the Relevant Period, Victor and the Board knew and was aware that Plaintiff was a victim of an assault and was suffering from diagnosed Post Traumatic Stress Disorder ("PTSD") wherein in retaliation of her refusal to return her copy of the control data her demands for payment of past due wages and so as prevent her from whistle blowing Defendant Victor with the knowledge of the Board intending to cause emotional distress and otherwise with actual malice did act to cause the filing of a criminal complaint though the Manhattan District Attorney's Office maliciously seeking the arrest and confinement of Plaintiff.

62.    During the Relevant Period, Victor and the Board knew and acted with malice under circumstances where they aware that the true purpose of the criminal complaint was to intimidate and create fear, emotional distress and otherwise gain an advantage in her claim for wages and credibility and so as to use the arrest to prevent Plaintiffs from disclosing the fraud in the viability of IntelliCell's -Victor's SCRP.

63.     That on or about June 14, 2013, Victor or an individual at Victor's request met with New York City District Attorney Allison Altmann falsely advising ADA Altman that Plaintiffs was illegally in possession of confidential information "worth billions of dollar" falsely claiming to ADA Altmann that Plaintiff was using said Control data to extort money from IntelliCell-Victor by threatening to disclosing said information to the public unless IntelliCell paid her $30,000.00; and failing to tell ADA Altmann of the true circumstances of her possession of the Control data and her rights thereto.

64.     That at times material hereto, during the Relevant Period Plaintiff's possession of said information was lawful and otherwise not subject to the laws of criminal possession where her right to present said in information to the regulatory authorizes and a right of free speech protected by federal and state constitutions; Plaintiffs claim for payment was a lawful demand as she was owed said money as and for past unpaid wages.

65.     That at times material hereto, during the relevant period without conducting an investigation or conducting researching into the law on Plaintiff's right to possess said control data  ADA Altman directed New York City Detective-Police Officer DOE and/or Detective Curly to prepare a complaint and arrest Plaintiff on the allegation of Victor as presented by his designee.

66.     That at all times during the relevant period Plaintiff informed Detective Curley of the false statements, ill will, spite and malicious motive of silencing her from being a whistle blower in the false filing-claims of his patent with certain regulatory authorities, including but not limited to the United States Food and Drug Administration.

67.     That prior to her arrest Plaintiff also provided Detective Ryan with proof that the arrest was retaliatory for her demanding payment for her past and overdue wages; the claims of the Victor were false and were willfully, maliciously presented with malice and aforethought and that it was agreed and conspired to among Victor and the Board to file a false criminal complaint with the New York City District Attorney's Office against the Plaintiff so as to obtain a civil advantage in her claims against them and otherwise undermine her credibility.

68.     That despite the information concerning the illegal activity of the Defendants Victor and the Board, without conducting an investigation into the claims-allegations of wrongdoing presented by Plaintiff, with a deliberate indifference to the proof presented Plaintiff was arrested by New York City Detective Curley in his capacity as police officers while acting under the color of law without a duly filed or issued warrant or without a crime having been committed in his presence and did cause the unpermitted physical confinement of Plaintiff unlawfully denying her of her liberty of free movement where said Plaintiff was aware of her confinement and unable to exercise her right of liberty.

69.     That at times material hereto, during the relevant period on or about June 15, 2013 Plaintiff was arraigned on the complaint of Detective Curley and bail was set in the amount of $100,000.00, Plaintiff was confined to the jails and penal institutions of the City of New York until her release on posting bond on or about June 19, 2013.

70.     Thereafter,  at times material hereto, during the relevant period and continuing until dismissal of the false charges filed against her on or about October 8, 2013, Plaintiff was subject to multiple court appearances and the continuing/malicious prosecution at the insistence of Victor and by the Municipal Defendants.

71.     That a result of the false arrest and illegal imprisonment the plaintiff, as planned by Defendant Victor, Plaintiff suffered the symptoms of PTSD, Plaintiff's health was impaired, plaintiff suffered great mental distress, her reputation and character were injured, her earning power has been permanently impaired large sums of money were expended by plaintiff in her defense of the false criminal claims.

## CAUSES OF ACTION

### COUNT I.
**Deprivation of Free Speech and Expression Deprivation of Rights Under The First and Fourteenth     Amendments     and   42 U.S.C. §1983**

72.     Plaintiffs hereby repeat and reallege each and every allegation set forth in paragraphs numbered "1" through "71", with the same force and effect as though set forth herein.

73.     The above described conduct and actions of the individual defendants, occurred at a time where defendants were acting under color of law, where defendants deprived Plaintiff of her rights to free expression due to Defendants Victor's personal animus and bias in order to silence Plaintiff's speech in retaliation against Plaintiff's exercise of her constitutionally protected right to disclose illegal-wrongful conduct; was done to interfere with, and chill, the exercise of free speech and association, and was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause serious emotional pain and suffering in violation of Plaintiff s constitutional rights as guaranteed under 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

74.     By reason of the foregoing, Plaintiff suffered injuries-damages and is entitled to an award in an amount to be determined by a jury sitting in judgment of her claims and in an amount no less than $75.000.

### COUNT II.
### Municipal Liability
### For Constitutional Violations
*Monell* Claim - 42 U.S.C. §l983

75.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "74" with the same force and effect as if fully set forth herein.

76.    The City of New York directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant ADA and police officers as associated with non-Municipal defendants.

77.    The joint conduct of the defendant was a direct consequence of policies and practices of Defendant City of New York.

78.    At all times relevant to this complaint Defendant City of New York, acting through the Manhattan District Attorney's Office and the NYPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

79.    That on June 14, 2013, Plaintiff became the victims of the Defendant City of New York, acting through its police department, and through the individual defendants by reason of its policies, practices, customs, and usages in failing to have a protocol in place to ensure plaintiffs right of free speech in her reporting the wrongful and illegal conduct as set forth above to outside agencies including the US Food & Drug Administration, Internal Revenue Services, New York State  sanctioning the retaliation for individuals exercise of her free expression.

80.    Upon information and belief, Defendant City of New York implemented a policy, practice, custom and usage of arrest while failing to

establishing whether a person was engaged in protected First Amendment activity, and when and whether the complainant was engaged in retaliation for their own misconduct, where police officers were discouraging from investigating the misconduct and motive of the a complainant through an investigation of the facts.

81.     In connection with the Plaintiff's claims of retaliation by Victor the City under its policy-practice custom consciously disregarded whether Plaintiff was in the lawful possession of data or other information claimed to be stolen and whether the illegality and unconstitutionality of the non-Municipal defendants' claims was maliciously pursued.

82.     These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.     The existence these unconstitutional customs and policies, specifically as it relates to issues of free speech.

84.     The City of New York knew or should have known by the lack of training that a deliberate indifference to the rights of the Plaintiff would occur.

85.     By reason of the foregoing acts of the Defendants it was the policy and/or custom of the City of New York to inadequately train, supervise and discipline its ADA's and police officers, including the defendant ADA and officers, thereby

failing to adequately discourage further constitutional violations on the part of its employees. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police the deliberate indifference of the need to investigate allegation of a crime not witnessed by them prior to arresting an individual.

86.     By reason of the foregoing described policies and customs, police officers of the City of New York, including the defendant employees believed that their actions would not be properly monitored by supervisory personnel and that misconduct would not be investigated or sanctioned, but would be tolerated.

87.     The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the City of New York to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

## COUNT III.
## False Arrest/Imprisonment Under 42 U.S.C. § 1983/ State Law Claims

88.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "87" with the same force and effect as if fully set forth herein.

89.     As a result of defendant's aforesaid conduct, Plaintiff was subjected to an illegal, improper and false arrest/imprisonment by defendant Curly and was

taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege or consent.

90.    Br reason of the foregoing, plaintiff's liberty was restricted for an extended period of time, she was put in fear for her safety, was physically and emotionally injured, she was repeatedly strip-searched and humiliated, and she suffered substantial economic losses and permanent damage to his reputation.

## COUNT IV.
## Malicious Prosecution Under 42 U.S.C. § 1983/ State Law Claims

91.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "90" with the same force and effect as if fully set forth herein.

92.    Defendant Curly lacked probable cause to initiate criminal proceedings against Plaintiff.

93.    Defendants Intellicell's Board by Victor acted misrepresented and falsified evidence before prosecutors in the New York County District Attorney's office.

94.    Defendant Intellicell's Board by Victor acted did not make a complete and full statement of material facts to prosecutors in the New York County District Attorney's office.

95.    Defendant Intellicell's Board by Victor acted withheld exculpatory evidence from prosecutors in the New York County District Attorney's office.

96.    Defendants Intellicell's Board by Victor acted was directly and actively involved in the initiation of criminal proceedings against plaintiff Sarah Young.

97.    Defendant Intellicell's Board by Victor acted acted with malice in initiating criminal proceedings against Plaintiff.

98.    Defendant Allison Altmann was directly and actively involved in the initiation of criminal proceedings against plaintiff Sarah R. Young.

99.    Defendant Altmann lacked probable cause to initiate criminal proceedings against Plaintiff.

100.   Defendant Intellicell's Board by Victor acted was directly and actively involved in the continuation of criminal proceedings against Plaintiff.

101.   Defendant Allison Altmanm was directly and actively involved in the continuation of criminal proceedings against Plaintiff.

102.   Defendant Altmann lacked probable cause to continue criminal proceedings against Plaintiff.

103.   Defendant Intellicell's Board by Victor acted with malice in continuing criminal proceedings against plaintiff.

104.   Defendant Intellicell's Board by Victor acted misrepresented and falsified evidence throughout all phases of the criminal proceeding.

105.    Notwithstanding the perjurious and fraudulent conduct of defendant Intellicell's Board by Victor the criminal proceedings were terminated in plaintiff's favor on October 7, 2013, when all charges against Plaintiff were dismissed.

106.    As a result of the foregoing, Plaintiff was subjected to a baseless prosecution, her liberty was restricted for an extended period of time, she was put in fear for her safety, she was physically and emotionally injured, she was repeatedly strip-searched and humiliated, and she suffered substantial economic losses and permanent damage to her reputation.

## COUNT V.
## Abuse Of Process-42 U.S.C. § 1983/State Law Claims

107.    Plaintiff repeats, reiterates and realleges each and every allegation contained  in paragraphs numbered "1" through "106" with the same force and effect as if fully set forth herein.

108.    Defendants Curly, Altmann, IntelliCell's Board by Victor acted caused to be issued legal process against Plaintiff.

109.    Defendant IntelliCell's Board by Victor acted and its Board caused to be issued legal process against Plaintiff to obtain a collateral objective outside the legitimate ends of the legal process.

110.    Defendant IntelliCell's Board by Victor acted with intent to do harm to Plaintiff, without excuse or justification.

111.   As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, she was put in fear for his safety, she was physically and emotionally injured, she was repeatedly strip-searched and humiliated, and she suffered substantial economic losses and permanent damage to her reputation.

## COUNT VI.
### Intentional Infliction of Emotional Distress
### Common Law Claim

112.   Plaintiff repeats, reiterates and realleges each and every allegation contained  in paragraphs numbered "1" through "111" with the same force and effect as if fully set forth herein.

113.   During the Relevant Period, Victor and the Board knew and were aware that the information possessed by Plaintiff and her disclosure of said information to the authorities would expose the data fraud and the lack of viability of the SCRP to the public, investors and force the authorities to take action.

114.   During the Relevant Period, Victor, Rhodes and Mazur so as to injure Plaintiff and prevent her use of said data and the evidence of fraud therein engaged in by Victor, Victor filed, or caused to be filed a false and misleading police report with the Assistant District Attorney Allison Altman of the Manhattan District Attorneys' Office.

115.   That upon information and belief, and at all times hereinafter mentioned, during the Relevant Period, Victor and the Board were  fully  aware

of the true facts relating to Sarah R. Young going to the authorities concerning the fraud and illegal activities of Victor; knew and was otherwise aware of her PTSD injury wherein Victor with the Board knowledge and consent did cause the intentional, malicious, willful and illegal false arrest and confinement of Sarah R. Young so as to force her to turnover material which Victor and the Board knew was damaging and further knew was evidence of data fraud concerning the viability of SCRP where said information was the lawful Property or otherwise lawfully in the Plaintiff's possession.

116.   That the conduct of the Defendants was extreme and otherwise outrageous so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society committed with malice and intent to cause severe emotional distress where the there was by reason of the conduct a direct link-connection between the conduct and the injury caused with Plaintiff suffering severe emotional distress.

### COUNT VII.
### Negligent Infliction of Emotional Distress
### Common Law Claim

117.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "118" with the same force and effect as if fully set forth herein.

118.    The Conduct of IntelliCell's Board by Victor described above, cause severe emotional distress to Plaintiff.

119.    The conduct of Defendants Curly, Altmann and by IntelliCell's Board by Victor was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.    By reason of the foregoing, Plaintiff was deprived of her liberty in her right to freely move about and was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

121.    Defendant's conduct in causing the arrest, arresting and the continued prosecution of Plaintiff, was careless and negligent as to the emotional health of Plaintiff, and caused severe emotional distress to Plaintiff.

122.    The acts and conduct of Defendant's was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

123.    By reason of the foregoing, Plaintiff was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

## COUNT  VIII.
### Negligence
### <u>Common  Law  Claim</u>

124.   Plaintiff repeats, reiterates and realleges each and every allegation Plaintiff repeats, reiterates and realleges each and every allegation contained  in paragraphs numbered "1" through "123" with the same force and effect as if fully set forth herein.

125.   Defendants The City of New York, NYPD Police Commissioner Raymond Kelly  in his official capacity, and individually,  NYPD Detective  Ryan Curley in his official capacity, and individually, Detective John Doe, in his official capacity, and individually, New York County District Attorney Cyrus Vance, Jr., in his official capacity, and individually, New York County Assistant District Attorney Allison Altmann, while acting as agent and employee for Defendant City of New York,  owed a duty to Plaintiff to perform their duties in reasonable manner and were required to conduct an investigation into the facts as provided by Plaintiff as to the retaliatory nature of Defendant Victor and the Board.

126.   Defendants did not have reasonable or probable cause and had no lawful authority to arrest or cause the arrest of Plaintiff wherein for their negligence Defendants are individually liable.

127.   By reason of the foregoing Defendants' negligent use of illegal process was the proximate cause to Plaintiff sustaining physical-emotional pain and suffering, and was otherwise damaged and injured.

## COUNT IX.
## Respondeat Superior Liability-City of New York
## Common Law Claim

128.   Plaintiff repeats, reiterates and realleges each and every allegation contained  in paragraphs numbered "1" through "127" with the same force and effect as if fully set forth herein.

129.   The conduct of Defendants Kelly, Cyrus Vance, Jr Curley, Doe and Altmann alleged herein occurred while he was on duty and during the course and scope of their duties and functions as a New York City employee-appointees, and while they was acting as an agent, officer, servant and employee of Defendant City of New York.

130.   By reason of the foregoing, Defendant City of New York is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

## COUNT X.
## Negligent Supervision, Retention and Training
## Common Law Claim

131.   Plaintiff repeats, reiterates and realleges each and every allegation contained  in paragraphs numbered "1" through "130" with the same force and effect as if fully set forth herein.

132.    Defendant t h e  City of New York negligently trained, retained, and supervised Defendants Curley, Doe and Altmann.

133.    The acts/conduct of Defendant Curley, Doe and Altmann were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

134.   By reason of the foregoing, Plaintiff was deprived of her liberty, was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

135.   That upon information and belief, and at all times hereinafter mentioned, the City by Detective Curley and the Manhattan District Attorney's Office ADA Altman was negligent and/or grossly negligent in their conduct or otherwise engaged in a course of unsupervised conduct as complained of hereafter.

136.   There exists a lack of training in furtherance of the policy, practice and/or custom of using a Police Officer to illegally implement official policy, practice, custom or usage of the City in giving preferential treatment to some complaints and under color of State law, that is, in derogation of the Constitution, Statutes, laws, ordinances, rules, regulations, of the United States, City and State of New York to effect the illegal conduct complained of herein the preferential and illegal treatment of complainants causing and resulting in  the emotional injury and loss of her liberty and property.

137.   That at all times hereinafter mentioned, the City's deliberate indifference-deference, and failure to train its employees-agents amounts to a policy which was instituted with the knowledge of the City, wherein, the  City was/is enforcing the aforesaid policy-practice, procedure and custom on behalf of some complainants in the preferential treatment of them and in violation of the Plaintiff's rights.

138.   That at all times hereinafter mentioned, in the alternative the deliberate indifference-deference was the policy-practice, procedure and custom of the City in failing to provide protocols or rules prohibiting such conduct.

139.   That at all times hereinafter mentioned, in the alternative the deliberate indifference-deference was the policy-practice, procedure and custom of the City in failing to train or supervise their agents, servants and employees not to engage in such conduct.

**COUNT XI.**
**New York Labor  Law  Art.6 - §§190 - 199-A  Wage Payment and Collection**

140.   Plaintiff repeats, reiterates and realleges each and every allegation contained  in paragraphs numbered "1" through "139" with the same force and effect as if fully set forth herein.

141.   Pursuant to the New York Wage Prevention Theft Act ("NYWPTA"), Defendants must pay their employees all wages due at regular pay periods.  Wages" means the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis.

142.   Pursuant to NYWPTA  Defendant must pay their employees all wages due for work that the employee performed before the conclusion of employment on, or before, the day on which the employee would have been paid had their employment not been terminated.

143.   Plaintiff has not been compensated her full measure of wages for all hours worked and was not compensated at the proper rate for hours worked in single workweek.

144.  By failing to timely pay Plaintiff her wages when due, Defendants violated the New York Labor Law Art.6 - §§190 - 199-A and the intent of NYWPTA.

145.  Defendants did not have a lawful right to withhold Plaintiffs wages.

146.  By reason of the foregoing a direct and proximate result of Defendants' violations of New York Labor Law Art.6 - §§190 - 199-A and the intent of NYWPTA, Plaintiff suffered significant damages.

147.  For the reason that more than the time allowed under the law to pay wages has lapsed from the date on which Defendants were required to have paid the wages, Defendants are liable to Plaintiff for their unpaid wages, plus an additional amount up to four (4) times the unpaid wages, reasonable attorneys' fees, interests and costs.

## COUNT XII.
### Fair Labor Standards Act of 1938  29 U.S.C. § 201, *et seq*.

148.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "147" with the same force and effect as if fully set forth herein.

149.  Defendants willfully and/or intentionally failed and/or refused to pay Plaintiff the regular wage which Plaintiff was due and owed pursuant to the Fair Labor Standards Act ("FLSA").

150.  Defendants' actions were taken with willful disregard for the rights of Plaintiff under the FLSA.

151.   Defendants' failure to accurately pay taxes track and record the proper salary and wages for the hours worked by Plaintiff violated FLSA.

152.   As a result of Defendants' unlawful conduct, Plaintiff suffered a loss of wages.

153.   For violating the FLSA, Plaintiff is entitled to recover from Defendants—in addition to the  money judgment awarded for unpaid regular, compensation—an additional  equal amount as liquidated damages and interest on the monies due and owing.  *See* 29 U.S.C. § 216(b).

154.   The FLSA further provides that Plaintiff shall be awarded reasonable attorneys' fees and the  costs of this action.  *See id*.

### COUNT XIII.
### Breach of Contract

155.   Plaintiff repeats, reiterates and realleges each and every allegation contained  in paragraphs numbered "1" through "154" with the same force and effect as if fully set forth herein.

156.   Defendants promised and represented to Plaintiff that she would be paid an annual salary of $110,000.00

157.   Relying upon Defendants' promise, Plaintiff relocated to New York to assume her employment with Defendant IntelliCell.

158.   IntelliCell owes Plaintiff wages / compensation in an in excess of $30,000.00.

159.   Defendants refused to make payment to Plaintiff.

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against all of the Defendants:

a.    Compensatory damages in the amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Costs and interest and attorney's fees;

d.    Such other and further relief as this Court may deem just and proper.

Dated:   June 13, 2014
           Goshen, New York

_____
Law Office of Douglas R. Dollinger, Esq., PC
      & Associates
By Douglas R. Dollinger, Esq. (5922)
Attorneys Plaintiff
50 Main Street
White Plains, New York 10606
 Tele.  845.915.6800
 Fax.   845.915.6801